IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2000

## STATE OF TENNESSEE v. WILLIAM WASHINGTON a/k/a "Freddie"

**Direct Appeal from the Criminal Court for Washington County**
**No. 25245B      Robert E. Cupp, Judge**

---

**No. E2000-00695-CCA-R3-CD**
**February 6, 2001**

---

William Washington was found guilty by a Washington County jury of one count of possession of less than one-half gram of cocaine with intent to sell. Washington, a range III offender, was sentenced to twelve years in the Department of Correction. The following issues are presented on appeal: (1) the sufficiency of the convicting evidence and (2) whether the trial court impermissibly limited the scope of his voir dire examination of prospective jurors with regard to racial bias. Finding no error, the judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Scott Pratt, Johnson City, Tennessee, for the Appellant, William Washington a/k/a "Freddie."

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Mark A. Fulks, Assistant Attorney General, Joe C. Crumley, Jr., District Attorney General, and Steve Finney, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Appellant, William Washington a/k/a "Freddie," appeals his jury conviction for one count of sale of cocaine less than one-half gram. The Washington County Criminal Court sentenced the Appellant as a range III offender to twelve years in the Department of Correction. The Appellant now contends that (1) the evidence is insufficient to support his conviction for the sale of cocaine and (2) the trial court erroneously limited defense counsel's voir dire of prospective jurors with regard to racial bias.

After review, we affirm.

## Background

In January of 1999, Larry Woodby assisted the First Judicial District Drug Task Force as a paid confidential informant in the surveillance and purchase of drugs in Washington County.[1] On January 20, 1999, Woodby contacted Drug Task Force Agents Walker and Robbins and advised them of drug activity at "Big G's"[2] in Johnson City. The agents arranged to meet Woodby at a parking garage. At the garage, the agents fitted Woodby with a radio transmitter to record the drug transaction and supplied him with $100 of marked money. Before Woodby left the garage, the agents searched Woodby's vehicle and his person for the presence of guns or drugs. After being cleared by the officers, Woodby proceeded to "Big G's."

At "Big G's," Woodby met the Appellant and Thelma "Squawky" Garland. After a brief conversation, the subject of crack cocaine arose, followed by Woodby's request for "a hundred dollars worth." The Appellant and Garland instructed Woodby to follow them "around back," where they "got in [Woodby's] vehicle [and] drove up to the top of Belmont . . . Then we walked over [to] where Mr. Jackson[3] was standing. . . .[The Appellant and Jackson] exchanged money and everything, then a few moments later he c[a]me back and got in the car and we left."

Once in Woodby's vehicle, the Appellant turned to Woodby, remarked, "Here's what you want," and handed Woodby three rocks of crack cocaine. Woodby replied, "Man, that's short."[4] The Appellant explained that "[the three rocks were] [pretty big] so you got a good deal." Woodby admitted that the three rocks of crack cocaine were "bigger than what is usually seen on Wilson Avenue." Shortly after the transaction, Garland asked Woodby for a "crumb." Woodby informed the Appellant and Garland that the drugs were for his brother and that he could not share with them. Woodby then drove the Appellant and Garland to a residence on Pine Street. He then returned to the parking garage where he met the agents and turned over the contraband. Subsequent laboratory testing by the Tennessee Bureau of Investigation confirmed that the substance delivered by the Appellant to Woodby was cocaine with a weight of .2 grams.

Based upon this proof, the jury found the Appellant guilty of possession of less than one-half gram of cocaine with intent to sell.

---

[1] The proof established that Woodby's participation with the Drug Task Force over a period of months resulted in at least two hundred pending cases. During this period, Woodby, a convicted felon, was also under indictment for drug charges.

[2] "Big G's" is never identified in the record and it is unclear whether it is a business, residence or an area of the town.

[3] Kenneth "Honey" Jackson was indicted as a co-defendant on these charges.

[4] Woodby later explained that, usually, he would receive four or five rocks of crack cocaine for a hundred dollars, instead of the three given to him by the Appellant.

## Sufficiency of the Evidence

The Appellant first contends that the evidence is insufficient as a matter of law to sustain his conviction for possession of less than one-half gram of cocaine with intent to sell. To convict a defendant for the sale of cocaine, the State must prove that the defendant knowingly sold a controlled substance. See TENN. CODE. ANN. § 39-17-417(a)(3) (Supp. 1999). The Appellant does not dispute that the substance transferred from Jackson to Woodby was, indeed, less than one-half gram of cocaine. Nor does he contend that his actions were unknowing. However, the Appellant argues that, under the authority of State v. Baldwin, 867 S.W.2d 358 (Tenn. Crim. App. 1993), superseded by statute as stated in, State v. Porter, 2 S.W.3d 190 (Tenn. 1999), he, as the "procurer" of the cocaine, may only be convicted of simple possession and not the greater offense of possession with intent to sell. Specifically, he contends that the facts in the present case fail to establish that he shared the criminal intent of the "seller," Jackson.

In State v. Baldwin, 867 S.W.2d at 359-360, this court modified the defendant's conviction for selling cocaine to one for simple possession, utilizing the rationale of the procuring agent defense. Initially, we note that the commission of the offense in Baldwin predated the Criminal Reform Act of 1989. Decisions of this court subsequent to the enactment of the 1989 Act have consistently held that "even though the defendant served only as the 'procuring agent,' he remained, pursuant to TENN. CODE ANN. § 39-11-402, criminally responsible for the sale of cocaine to the same extent as the individual who actually provided the substance." See State v. Albert Dewaynn Porter, No. 02C01-9501-CC-00029 (Tenn. Crim. App. at Jackson, Jul. 16, 1997), aff'd by, 2 S.W.3d 190 (Tenn. 1999) (holding that the "procuring agent" defense was abolished *in toto* by the enactment of the Criminal Reform Act of 1989) (citing State v. Jack Greenwood, No. 01C01-9109-CR-00280 (Tenn. Crim. App. at Nashville, Mar.19, 1992)). Cf. State v. Phil Wilkerson, No. 03C01-9708-CR-00336 (Tenn. Crim. App. at Knoxville, Jul. 9, 1998) (definition of "sale" applied to defendant who delivered the property for which he had accepted payment); State v. Michael Wayne Henry, No. 02C01-9611-CC-00382 (Tenn. Crim. App. at Jackson, May 29, 1997), perm. to appeal denied, (Tenn. Mar. 2, 1998) (same). To establish criminal responsibility for the conduct of another, the State must prove that the defendant, "acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or result of the offense, . . . solicit[ed], direct[ed], aid[ed] or attempt[ed] to aid another person to commit the offense."[5] TENN. CODE ANN. § 39-11-402(2) (1997). In the present case, Woodby, the confidential informant, approached the Appellant seeking to purchase crack cocaine. The Appellant took Woodby to a particular area where drugs could be purchased. The Appellant accepted $100 cash from Woodby and exchanged it with Jackson for three rocks of crack cocaine. The Appellant then gave the crack cocaine to Woodby who inspected and agreed to purchase the rocks. This factual scenario supports the conclusion that the Appellant is criminally responsible for the sale. See, e.g., State v. Albert Dewaynn Porter, No. 02C01-9501-CC-00029 (defendant directed undercover officer and informant to apartment complex where sale would take place; defendant accepted $250 cash from officer and went to another apartment where he exchanged money for 8-ball of cocaine; these facts establish that defendant was criminally

---

[5] In the present case, the trial court instructed the jury as to the theory of criminal responsibility.

responsible for the sale); State v. Jack Greenwood, No. 01C01-9109-CR-00280 (on several occasions, undercover officer gave defendant $100; defendant left and returned later with cocaine; these facts establish that defendant was criminally responsible for the sale). Accordingly, the evidence is more than sufficient to support the Appellant's conviction. See Jackson v. Virginia, 443 U.S. 307, 317, 99 S. Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, 513 U.S. 1086, 115 S. Ct. 743 (1995); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S. Ct. 1368 (1993); Tenn. R. App. P. 13(e). This issue is without merit.

### Restriction of Voir Dire

In his final issue, the Appellant contends that the trial court erroneously restricted defense counsel's voir dire of prospective jurors with regard to racial bias. Specifically, he asserts that the court's actions prevented the effective interrogation of prospective jurors which resulted in counsel's inability to effectively exercise his peremptory challenges. The Appellant identifies in his brief, as evidence of the trial court's "strict limitation on the inquiry" of racial bias, the following voir dire examination of prospective jurors by the court:

> Folks, I want to ask you just a couple of follow-up questions based upon that. This is the year 2000. If we had prejudices, they should have been gone years ago. And I'm going to ask you all a simple question. The fact that these two defendants are black, does that - - do you feel that you can't sit and give these two defendants a fair trial? Do you have to - - do we even have to mention color this day and time? Do you - - do you have to look over there and say that there's a black person over there, and simply because there's a black person over there, I can't treat that black person like I can anyone else? Is there anyone that feels that way this day and time? If you do, just raise your hand.

This voir dire was immediately preceded by counsel's unartful attempt to examine the prospective jurors in the following manner:

> The first things I'd like for all of you to do is look around the room. I mean really look around the room. That man right there is scared. Let me tell you why. He's black. Look around. Everybody except for you and you is white.

Objections immediately followed. A bench conference was held with the trial court instructing counsel that, "You're not asking the question properly." Counsel was advised that he could rephrase the questions and that inquiry of racial bias could continue. With this instruction, counsel then inquired of the prospective jurors:

> How would you feel sitting in - - and I'm not saying anybody here is a racist, but how would you feel sitting in that chair looking back through here and seeing what they see?

Again, the prosecution objected and another bench conference was held, resulting in similar instructions from the trial court and admonitions to trial counsel. Nonetheless, the same general form of inquiry persisted and it was only at this point that the trial court intervened by examining the prospective jurors in the manner which is now being challenged by the Appellant.

The ultimate goal of voir dire is to insure that jurors are competent, unbiased, and impartial. State v. Mann, 959 S.W.2d 503, 533 (Tenn. 1997), reh'g denied, (1998), cert. denied, 524 U.S. 956, 118 S. Ct. 2376 (1998); Cazes, 875 S.W.2d at 262. In Tennessee, the trial court has wide latitude in the examination of prospective jurors.[6] This includes the court's questioning of potential jurors regarding their qualifications to serve as jurors and "the court's supervision of questioning by the respective parties for the purpose of discovering bases for challenge for cause and enabling an intelligent exercise of peremptory challenges." See Tenn. R. Crim. P. 24(a). The actions of the trial court in this regard will not be disturbed unless there is an abuse of the court's discretion. State v. Irick, 762 S.W.2d 121, 125 (Tenn. 1988), cert. denied, 489 U.S. 1072, 109 S. Ct. 1357 (1989); State v. Black, 618 S.W.2d 526, 527 (Tenn. Crim. App. 1981).

Our examination of the record leads us to the conclusion that the trial court's action did not impermissibly intrude upon the scope of appellant's voir dire examination of prospective jurors. The Advisory Commission Comments to Rule 24, Tenn. R. Crim. P., provide: "The Commission disapproves of questions tending to lead the prospective juror or suggest partiality in the first instance. . . ." Additionally, although the court prohibited counsel's manner of questioning on several occasions, the court, in its own examination of the prospective jurors, inquired as to any possible bias or prejudice the prospective jurors might have based on the Appellant's race. Contrary to the inferences raised by the Appellant's argument, there is no constitutional right that a defendant is entitled to have questions posed to the venire specifically directed to matters that conceivably might prejudice venire men against him. See Ross, 424 U.S. at 594, 96 S. Ct. at 1020 (citing Ham v. South Carolina, 409 U.S. 524, 527-28, 93 S. Ct. 848, 850 (1973)). Specific questioning as to racial bias is only necessary where the particular circumstances of the case require. See Ross, 424 U.S. at 596, 96 S. Ct. at 1021;[7] Ham, 409 U.S. at 527, 93 S. Ct. at 850; see also Black, 618 S.W.2d

---

[6]This is so because "the determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." Ristaino v. Ross, 424 U.S. 589, 594-95, 96 S. Ct. 1017, 1020 (1976) (citing Rideau v. Louisiana, 373 U.S. 723, 733, 83 S. Ct. 1417, 1423 (1963) (Clark, J., dissenting)).

[7]The Court in Ross specifically rejected a *per se* rule regarding juror questioning on racial prejudice. Ross, 424 U.S. at 596, 96 S. Ct. at 1021, n. 8. In doing so, the Court stated:

> We note that such a *per se* rule could not, in principle, be limited to cases involving possible racial prejudice. It would apply with equal force whenever voir dire questioning about ethnic origins was sought, and its logic could encompass questions concerning other factors, such as religious affiliation or national origin. In our heterogeneous society policy as well as constitutional considerations militate against the divisive assumption – as a *per se* rule – that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the choice of religion.

(continued...)

at 528. The present case is absent any facts which would lead this court to conclude that specific questioning is required.

From the facts before this court, we cannot conclude that the Appellant's trial was "fundamentally unfair." Each of the jurors ultimately impaneled made unqualified assertions that they could be fair and impartial. The transcript before this court does not demonstrate any fundamental unfairness in the conduct of the trial. Indeed, "where a juror is not legally disqualified or there is no inherent prejudice, the burden is on the [d]efendant to show that a juror is in some way biased or prejudiced." State v. Caughron, 855 S.W.2d 526, 539 (Tenn.), cert. denied, 510 U.S. 979, 114 S. Ct. 475 (1993). In the present case, the Appellant has failed to establish that he was not provided a trial cloaked with guarantees of fundamental fairness. Nor has the Appellant established the racial bias of any of the jurors ultimately impaneled. Accordingly, not only do we conclude that the trial court did not abuse its discretion, but also we find that the Appellant has not established that the trial court's restriction unduly impacted defense counsel's ability to effectively exercise peremptory challenges. This issue is without merit.

For these reasons, the judgment of conviction is affirmed.

_____
DAVID G. HAYES, JUDGE

---

[7](...continued)
Ross, 424 U.S. at 596, 96 S. Ct. at 1021, n.8 (internal citations omitted).